# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| DOMINEQUE RAY, | ) |
| Petitioner, | ) ) ) |
| v. | ) CIVIL ACTION 11-0543-WS-N ) |
| KIM THOMAS, Commissioner, Alabama Department of Corrections, *et al.*, | ) ) ) |
| Respondents. | ) |

## ORDER

This death-penalty habeas corpus action comes before the Court on petitioner's Motion to Alter or Amend Judgment (doc. 41).

**I.   Background.**

Petitioner, Domineque Ray, was convicted and sentenced to death in the Circuit Court of Dallas County, Alabama, for the July 1995 murder of 15-year old Tiffany Harville, whose skeletal remains were discovered in a cotton field outside of Selma. Alabama state courts found no merit to Ray's direct appeal (as to which relief was denied on all eight asserted grounds by the Alabama Court of Criminal Appeals in January 2001) and his Rule 32 petition (as to which all 13 assignments of error were rejected by the trial judge in a 107-page opinion in August 2007 after a three-day evidentiary hearing, and by the Alabama Court of Criminal Appeals in a lengthy written order entered in February 2011).

On September 19, 2011, Ray timely filed in this District Court a § 2254 Petition for Writ of Habeas Corpus by Prisoner in State Custody under Death Sentence, in which he invoked eight grounds for federal habeas corpus relief, plus dozens of embedded sub-grounds and sub-issues. All of these asserted grounds for relief were briefed extensively, via Ray's 141-page amended § 2254 petition, the State's 106-page answer, Ray's 60-page merits brief, and the State's 25-page merits brief. After careful review of all of these materials, as well as the 30-volume state-court record, the undersigned entered a 113-page Order (doc. 37) on September 26, 2013, denying the

§ 2254 petition and denying a Certificate of Appealability because Ray failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2).

On October 24, 2013 (the 28th calendar day after entry of the September 26 Order and Judgment), Ray filed a Motion to Alter or Amend Judgment under Rule 59(e), Fed.R.Civ.P. In that Motion, petitioner requests that the Court reexamine the following issues: (i) whether petitioner is entitled to habeas relief on his *Brady* claim; (ii) whether petitioner is entitled to habeas relief on his claim that trial counsel rendered ineffective assistance as to the penalty phase of his trial; and (iii) whether petitioner is entitled to an evidentiary hearing on his claim of ineffective assistance relating to the "steroid abuse" defense. The Court addresses each of these matters in turn.

## II. Legal Standard for Motions to Reconsider.

Petitioner's Motion to Alter or Amend makes passing reference to Rule 59(e), Fed.R.Civ.P., but does not otherwise acknowledge or address the stringent standard for relief governing his Motion. A dissatisfied federal litigant is not entitled to reconsideration of anything and everything, merely because he disagrees with a court's decision. To the contrary, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar). To prevail on a Rule 59(e) motion, "[t]he losing party must do more than show that a grant of the motion might have been warranted; he must demonstrate a justification for relief so compelling that the district court was required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (citations and internal marks omitted).

Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[1] Rule 59(e) motions do not afford an unsuccessful

---

[1] *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration (Continued)

litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012); *see also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong"). "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Lee*, 2012 WL 3137901, at *2.

Notwithstanding petitioner's failure to address them, these principles inform the undersigned's analysis of Ray's Motion to Alter or Amend Judgment.

## III. Petitioner's Specific Grounds for Rule 59(e) Relief.

### A. Brady *Claim.*

#### 1. *Treatment of Claim in the September 26 Order.*

In his Amended § 2254 Petition, Ray asserted that the State failed to provide him with three categories of exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Those categories of purported *Brady* materials were as follows: (i) witness statements from four persons implicating Rod Suttle in the Harville murder, and a fifth statement from a person named Dolly Jackson; (ii) an August 23, 1995 letter from the Dallas County Sheriff's Office to the New York State Police stating the DCSO's belief that the murder had occurred somewhere other than where the remains were discovered; and (iii) evidence that petitioner contends casts doubt on his guilt in the murders of Reinhard and Ernest Mabins, of which Ray was convicted in February 1999.

The September 26 Order denied Ray's *Brady* claim on two alternative grounds. First, the Court found that federal habeas review of this claim on the merits was barred because Alabama

---

properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court. The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider serve a valuable but limited function. They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted.").

courts had rejected it on adequate and independent state procedural grounds. *See, e.g., Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011) ("a federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). In particular, the Court found that (i) the state courts rejected Ray's *Brady* claim pursuant to Rules 32.2(a)(3) and 32.2(a)(5) of the Alabama Rules of Criminal Procedure because he failed to plead facts in his Rule 32 petition showing that he could not have raised this claim at trial or on direct appeal; and (ii) the state courts rejected Ray's *Brady* claim relating to the DCSO letter and the Mabins murders because it was not raised in his Rule 32 petition. Second, the Court found that even if Ray's *Brady* claim were not procedurally barred, it would fail on the merits.

## 2. *The Procedural Bar.*

With regard to the procedural aspect of this Court's ruling on the *Brady* claim, Ray devotes nearly half of his Rule 59 Motion to this issue, muddying the analytical waters and largely re-plowing procedural ground that has previously been covered. (Doc. 41, at 2-12.) He again insists that the state court's procedural ruling hinged on Rule 32.1(e), Ala.R.Crim.P., even though the September 26 Order set forth in detail why the Court construed the state-court ruling as resting on Rules 32.2(a)(3) and 32.2(a)(5). (*See* doc. 37, at 19-20 & n.24.)[2] He criticizes the September 26 Order for not discussing *Ex parte Pierce*, 851 So.2d 606, 613 (Ala. 2000), a case about whether a Rule 32.1(a) claimant must prove the elements of Rule 32.1(e) (which is not at issue here), rather than what a petition must plead to satisfy Rules 32.2(a)(3) and 32.2(a)(5) (which is at issue here).[3] He identifies for the first time a July 2013 Alabama Supreme Court

---

[2] Once again, Ray chooses to ignore the Alabama Court of Criminal Appeals' holding that, because of pleading defects in his Rule 32 petition, "these allegations are procedurally barred because they could have been but were not raised at trial and because they could have been but were not raised on appeal." *Ray v. State of Alabama*, 80 So.3d 965, 973 (Ala.Crim.App. 2011) ("*Ray II*"). This language tracks Rules 32.2(a)(3) and 32.2(a)(5), and the Court thus remains of the view that a reasonable reading of *Ray II* is that the Alabama appellate court deemed petitioner's *Brady* claims procedurally barred because he failed to plead facts showing compliance with Rules 32.2(a)(3) and 32.2(a)(5). In arguing otherwise, petitioner seizes on the Alabama appellate court's unnecessary citation of Rule 32.1(e) and its reference to "newly discovered evidence," while disregarding that court's underlying rationale.

[3] In that regard, Ray suggests that this Court incorrectly perceived that a petitioner must prove that his claims were based on "newly discovered material facts" pursuant to Rule
(Continued)

-4-

case, *Ex parte Beckworth*, --- So.3d ----, 2013 WL 3336983 (Ala. July 3, 2013), without explaining why he failed to bring it to the Court's attention immediately via notice of supplemental authority (which he could have done well before issuance of the September 26 Order) or offering any argument as to whether the rule in *Beckworth* is retroactively applicable to Ray, whose Rule 32 petition was finally adjudicated in state court more than two years before the *Beckworth* decision.[4]

Petitioner also challenges the September 26 Order's conclusion that certain aspects of Ray's *Brady* claim are procedurally defaulted for another reason. In particular, the state courts deemed portions of the claim predicated on the DCSO letter and the Mabins investigation to be barred because Ray did not raise them in his Rule 32 petition. The September 26 Order observed that petitioner "does not suggest that he ever attempted to amend his Rule 32 petition" in that fashion, "nor does he identify any principle of law or Alabama procedure that would have precluded him from doing so once he became aware of this allegedly suppressed evidence."

---

32.1(e). Not so. The September 26 Order expressly cited Alabama authority for the proposition that a Rule 32 petitioner "does not have to prove that his *Brady* claim is based on 'newly discovered material facts' as defined under Rule 32.1(e)(1)-(5)." (Doc. 37, at 20 (quoting *Yeomans v. State*, --- So.3d ----, 2013 WL 1284361, *26 (Ala.Crim.App. Mar. 29, 2013)). There was no misunderstanding by the Court on this point.

[4] As the September 26 Order explained, a long, consistent line of Alabama appellate authorities had held that a Rule 32 petitioner must plead facts showing that his claim could not have been raised at trial or on direct appeal, in order to satisfy Rules 32.2(a)(3) and (5). *See, e.g., Yeomans*, 2013 WL 1284361, at *26-27 (Rule 32 petitioner bringing a new *Brady* claim "must still plead facts indicating that his claim could not have been raised at trial or on direct appeal to avoid being procedurally barred under Rule 32.2(a)(3) and Rule 32.[2](a)(5)"). Petitioner identifies no pre-*Beckworth* authorities in which Alabama appellate courts interpreted Rules 32.2(a)(3) and (a)(5) differently with respect to the pleading requirement. *Beckworth* appears to have altered the Alabama landscape by holding that a "Rule 32 petition should not have been dismissed on the ground that his claim for relief under Rule 32.1(a) lacked allegations negating the preclusive bars of Rule 32.2(a)(3) and (5)." *Beckworth*, 2013 WL 3336983, at *5; *see Mashburn v. State*, --- So.3d ----, 2013 WL 3589300, *13 n.3 (Ala.Crim.App. July 12, 2013) (recognizing that *Beckworth* invalidated prior precedents holding "that a Rule 32 petitioner must plead facts in his or her petition to overcome the procedural bars contained in … Rules 32.2(a)(3) and (a)(5)") (citation and internal quotation marks omitted).

(Doc. 37, at 21 n.27.)[5] Now, Ray contests this Court's determination that "Ray sought to inject new *Brady* claims into his collateral appeal that he never presented to the Rule 32 trial court," but that "[t]he Alabama Court of Criminal Appeals rebuffed that effort pursuant to an adequate and independent state law procedural rule." (Doc. 37, at 22.) Those determinations were not manifestly erroneous.[6]

One could probably devote dozens of pages to an exhaustive discussion of Ray's procedural-bar challenges. Supplemental briefing could be ordered on newly-raised questions such as the impact of *Beckworth*. The Court could slog through the minutiae of Alabama procedures as they related to the state courts' procedural grounds for rejecting Ray's *Brady* claim. However, the undersigned declines to do so because, for the reasons already set forth *supra* and in the September 26 Order, petitioner has not shown that the Court's application of the procedural bar doctrine to Ray's *Brady* claim was a "manifest error of law" that might warrant Rule 59(e) relief. Furthermore (and more importantly), this exercise is academic. Even if

---

[5] With no citations to authority, petitioner argues that he should not have been required to amend his Rule 32 petition to identify the *Brady* claims once he discovered them because (i) *Pierce* (which concerned Rule 32.1(e), not the relevant Alabama rule that "[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition," *Arrington v. State*, 716 So.2d 237, 239 (Ala.Crim.App. 1997)) did not require it; (ii) "Ray's lead postconviction counsel are from Indiana;" and (iii) "it isn't clear that" a motion to amend would have been granted. (Doc. 41, at 12 & n.5.) Such contentions are not persuasive and do not expose a manifest error of law or fact in the September 26 Order.

[6] Specifically, Ray says that the September 26 Order failed to identify the "new *Brady* claims" or showed where the Alabama Court of Criminal Appeals "rebuffed that effort." (Doc. 41, at 10.) Petitioner is being coy. The entirety of § III.C.2. of the September 26 Order (from which he lifts the quoted language and professes inability to discern what the Court could be talking about) is focused on "Ray's *Brady* claims concerning the New York police letter and evidence about the Mabins investigation." (Doc. 37, at 21.) Subsection III.C.2. explains the Court's reasoning for why those claims were "new" and identifies a pinpoint citation for the Alabama Court of Criminal Appeals' rejection of those claims on an independent and adequate state procedural ground. Petitioner also insists that "the trial court was well aware of Ray's *Brady* claims in his entirety" (doc. 41, at 10), but offers nothing more than his own supposition that the trial court connected the dots in this manner, without citing anything in the record (either hearing transcripts or written filings) showing that he expressly notified the trial court that he was asserting *Brady* claims based on the DCSO letter or the Mabins investigation. And of course, he never sought to amend his Rule 32 petition to identify those claims and clarify that he intended to raise additional *Brady* claims outside the scope of the particular categories identified in that petition.

petitioner were correct that his *Brady* claim is not procedurally defaulted and that the Alabama courts misapplied their own precedents, rules and procedures, his *Brady* claim would still fail on the merits, his § 2254 petition would still properly be denied, and Rule 59 relief would still be unavailable.

### 3. *The Merits Ruling as to Witness Statements.*

With regard to the witness statements implicating Rod Suttles in the Harville murder, the September 26 Order concluded as follows: "The trial court's factual determination that Ray's counsel had the information in the subject statements before trial is not clearly erroneous and will not be disturbed on federal habeas review under AEDPA. That finding compels the legal conclusion that no *Brady* violation occurred with respect to these statements." (Doc. 37, at 26.) In his Motion to Alter or Amend Judgment, petitioner takes this Court to task for accepting the trial court's finding of fact.[7]

Petitioner's argument is unavailing under Rule 59(e) for three reasons. First, he minimizes the extraordinarily deferential AEDPA standard of review. *See, e.g., Kearse v. Secretary, Florida Dep't of Corrections*, 669 F.3d 1197, 1198 (11th Cir. 2011) ("AEDPA further requires federal courts to defer to a state court's determination of a factual issue, though it permits a petitioner to rebut those determinations by clear and convincing evidence."); *Consalvo v. Secretary for Dep't of Corrections*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.") (citation and internal quotation marks omitted). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even fair support in the record." *Rose v. McNeil*, 634 F.3d 1224, 1241 (11th Cir. 2011) (citations omitted). Here, the trial court made a specific factual finding after an evidentiary hearing at which it observed Attorney Whatley's demeanor and credibility, rather

---

[7] In multiple places in his Motion, petitioner makes inaccurate statements about the scope of the trial court's factual finding. In particular, he repeatedly insinuates that the trial court made factual determinations that the DCSO letter, the Dolly Jackson materials, or the Mabins materials had been disclosed to the defense before trial. (Doc. 41, at 11 n.4, 13-14 n.6, & 16 n.9.) That is not the case. (*See* doc. 37, at 16-17; *Ray II*, 80 So.3d at 973-75.)

than being confined to a cold record. Petitioner has not rebutted that factual finding by the requisite clear and convincing evidence.

Second, petitioner inaccurately suggests that this Court "did not consider what minimally competent counsel would have done with the evidence," asserts that no lawyer who had this evidence would have failed to use it at trial, and says that the undersigned "did not even consider this aspect of its factual conclusions." (Doc. 41, at 16.) The September 26 Order examined transcript excerpts showing that Attorney Whatley did, in fact, use the subject witness statements (and facts gleaned from them) at trial in a very specific manner in cross-examination of Lt. Freine. (Doc. 37, at 24-25.) With regard to questions defense counsel posed that drew on information contained in those witness statements, the September 26 Order observed, "Petitioner does not explain where and how Whatley would have obtained this information if not from the subject witness statements." (*Id.* at 25.) It is not clear what petitioner thinks Attorney Whatley should have "done with" these statements at trial beyond using them as the bedrock of his cross-examination of Lt. Freine concerning the possibility that Suttles (and not Ray) had murdered Harville, much less that Attorney Whatley could have done anything more than he did.[8]

Third, even if petitioner were correct (and he is not) that it was a manifest error for this Court to accept the state court's factual finding that the subject witness statements had not been suppressed, his *Brady* claim predicated on those statements would fail. A defendant cannot prevail on a *Brady* claim without a showing of prejudice or materiality, which in turn requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Allen v. Secretary, Florida Dep't of Corrections*, 611

---

[8] If petitioner's theory is that defense counsel could have introduced the written witness statements into evidence, he has not explained how such evidence would have been admissible at trial. Those statements were brimming with double- or triple-hearsay; after all, their contents consisted of what the police wrote down that the declarant had told the police that someone else had told the declarant. By all appearances, Rule 802 of the Alabama Rules of Evidence would have posed a formidable obstacle to any attempt by defense counsel to introduce these hearsay-riddled statements. *See generally Ex parte Walker*, 623 So.2d 281, 284 (Ala. 1992) (although accused may offer evidence that someone else committed the crime, such evidence "must meet several requirements, one of which is that the evidence would have to be admissible if the third party was on trial"). Petitioner offers no basis for his assumption that these witness statements would have been presented to the jury, despite the glaring admissibility problems, had his trial counsel had them.

F.3d 740, 746 (11th Cir. 2010) (citations and internal quotation marks omitted). "A reasonable probability of a different result is possible only if the suppressed information is itself admissible evidence or would have led to admissible evidence." *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir. 1994); *Delap v. Dugger*, 890 F.2d 285, 299 (11th Cir. 1989) (ruling that habeas petitioner's "*Brady* claim must fail" where "it is highly questionable whether the evidence would have been admissible under Florida law"). Petitioner does not explain how these witness statements were admissible evidence (despite being stuffed with hearsay stacked atop hearsay) or would have led to admissible evidence. Moreover, the jury heard about the contents of many of those statements via Lt. Freine's cross-examination at trial, and otherwise heard substantial evidence tending to support the defense theory that Suttles was the killer. Any information contained in those witness statements that the jury did not hear was cumulative of what it did hear;[9] therefore, there is no reasonable probability of a different result, and no *Brady* violation even if the statements had been wrongfully suppressed.

### 4. *The Merits Ruling as to Other Items.*

Petitioner's Rule 59(e) challenge to the merits ruling rejecting his *Brady* claim insofar as it concerns the DCSO letter and the Mabins investigation may be dispatched quickly.

With respect to the letter, petitioner argues that if the State had disclosed it, counsel would have inquired "*why* did local authorities believe Tiffany Harville had been murdered elsewhere?" (Doc. 41, at 15.) The trouble is that, as the September 26 Order explained, nothing in the subject letter (which was written shortly after Harville's remains were recovered) suggested that DCSO investigators had any evidence, facts or particular reason to support that "belief." Law enforcement officers testified at trial that following the discovery of Harville's remains, there were "leads going in all different directions" with "various and sundry leads or pieces of evidence or information." (Vol. 4, R-13 at 405.) Most importantly, the September 26 Order observed that, even after disclosure of the DCSO letter, petitioner never developed evidence that lent even dim support to the notion that Harville had been murdered somewhere other than the cotton field where her remains were found. By all appearances, this letter was

---

[9] "The non-disclosure of cumulative or repetitious evidence is not sufficient to establish a *Brady* claim." *Pardo v. Secretary, Florida Dep't of Corrections*, 587 F.3d 1093, 1106 (11th Cir. 2009).

mere conjecture at an early stage of a difficult murder investigation. Thus, assuming the letter were suppressed, there is no reasonable probability that its timely disclosure would have caused the result of the proceeding to have been different. Petitioner has not met the materiality/prejudice threshold necessary to sustain a viable *Brady* claim based on suppression of the DCSO letter.[10] *See, e.g., Bradley v. Nagle*, 212 F.3d 559, 567 (11th Cir. 2000) (rejecting *Brady* claim where petitioner "presents only speculation that he would have uncovered any admissible evidence from these three hearsay leads," and court could not say that "had the jury heard evidence of these tenuous and ultimately fruitless police suspicions … they would have reached a different conclusion," such that "we are unable to say that this verdict is not worthy of confidence").

As for the alleged *Brady* evidence concerning the Mabins murder investigation, the September 26 Order rejected Ray's claim because, *inter alia,* he failed to satisfy the materiality element of *Brady* by showing that such evidence would have been admissible, given the general prohibition on a defendant collaterally attacking one conviction in another case. (Doc. 37, at 28.) In other words, the September 26 Order found that Ray had not shown prejudice from the alleged suppression of the Mabins evidence because he did not explain how evidence concerning the Mabins murders (of which he had been convicted by another jury after a full trial) was admissible in the penalty-phase proceedings of the Harville murder trial. In his Rule 59(e) Motion, petitioner points to Attorney Whatley's Rule 32 hearing testimony that "I think I would have been entitled to argue" the point. (Doc. 41, at 14 n.6.) This contention, devoid of any legal citations, reasoning or analysis, falls far from satisfying Ray's prejudice/materiality burden under *Brady*.[11]

---

[10] Another way to say it is this: Petitioner insists in his Rule 59(e) motion that disclosure of the DCSO letter would have caused his trial counsel to investigate new leads. (Doc. 41, at 15.) But he offers not the slightest scrap of evidence that such leads would have borne fruit or would have made any difference, or that the DCSO letter was anything more than speculation untethered to any articulable facts supporting a conclusion that the murder site was somewhere else.

[11] Even if petitioner could meet that threshold, this *Brady* claim would nonetheless fail. If Ray had presented evidence in the Harville trial that Sheriff Huffman at one point believed that the Mabins brothers had been killed by their father, Ray would have opened the door for the State to present the full weight of evidence incriminating him in the grisly slaying of two young boys, thereby allowing "the State to demonize him with extensive, highly damaging
(Continued)

### B. Ineffective Assistance of Counsel with Respect to Mitigation.

Petitioner's Rule 59(e) Motion attacks the September 26 Order's analysis of his penalty-phase ineffective assistance claim in three respects. First, he decries what he calls this Court's "heavy reliance on the judge's conclusions that he would not have been swayed by the additional mitigating evidence." (Doc. 41, at 16.) Second, he says that this Court's ruling is contrary to a 2011 Eleventh Circuit decision captioned *Johnson v. Secretary, DOC*. (*Id.* at 17-18.) Third, he brands the September 26 Order "inconsistent" by calling certain new evidence cumulative while also reasoning that its admission would have opened the door for the State to present additional damaging evidence. (*Id.* at 18-19.)

Petitioner's "heavy reliance" argument mischaracterizes the September 26 Order. This Court did not begin and end its *Strickland* prejudice analysis by citing Judge Jones' determination that Ray's additional mitigation evidence would not have altered his conclusion that the aggravating circumstances outweighed the mitigating circumstances. Instead, the September 26 Order observed that most of the childhood abuse/trauma evidence that petitioner now advances "was cumulative of themes trial counsel actually did develop in the penalty phase." (Doc. 37, at 48.) In light of that conclusion, the September 26 Order continued, "[i]t was not unreasonable for the state courts to conclude that petitioner has not shown a reasonable probability that, had counsel investigated and presented the mitigation evidence concerning Ray's childhood that petitioner says should have been presented, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant a death sentence." (*Id.* at 48-49.) Judge Jones' statement about what he would or would not have done was by no means dispositive of the analysis; rather, the Court's reasoning was rooted in Ray's failure to satisfy the Eleventh Circuit's directive that "[h]e must show that the evidence would have been so helpful that every reasonable jurist, without exception, would have concluded that there is a reasonable probability that the sentence would have been different if the jury had heard

---

evidence and details of the Mabins' killings." (Doc. 37, at 27 n.35.) Presenting this *Brady* evidence to the jury would in all likelihood have done more harm than good, and would certainly not created any reasonable probability that the result of the Harville penalty-phase proceedings would have been more favorable to Ray. Petitioner's Rule 59 Motion does not rebut this reasoning.

all of the aggravating circumstances evidence and all of the mitigating circumstances evidence." *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1273 (11th Cir. 2012).

Next, petitioner contends that this Court must revisit its mitigation analysis in light of *Johnson v. Secretary, DOC*, 643 F.3d 907 (11th Cir. 2011), because he says "the mitigation evidence that could have been presented in *Johnson* presents a less compelling story than that here." (Doc. 41, at 18.) This is an improper argument. The *Johnson* decision was handed down by the Eleventh Circuit on June 14, 2011, nearly a year before Ray filed his merits brief. Ray admits that he never cited *Johnson* before, but nonetheless seeks alteration or amendment of the judgment in light of *Johnson*. Motions to reconsider are not properly used to raise arguments that could have been presented before, but were not. *See, e.g., Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (Rule 59(e) motions cannot be used to "raise argument … that could have been raised prior to the entry of judgment"); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) (motions to reconsider "do not exist to permit losing parties … to provide evidence or authority previously omitted"). The Court therefore will not consider petitioner's newly raised *Johnson* argument.[12]

---

[12] Even if this argument were to be considered, the result would be unchanged. Petitioner inaccurately couches the facts in *Johnson* as "less compelling" than those here. In *Johnson*, the Eleventh Circuit found *Strickland* prejudice where defense counsel's mitigation case with regard to the defendant's childhood consisted of the following: (i) the defendant's parents were uncaring, (ii) the defendant's parents would take a drink on weekends, (iii) the defendant was placed in an orphanage when his parents were separated, and (iv) the defendant was sent to live with nurturing grandparents when his father moved to Florida. *Johnson*, 643 F.3d at 936. The jury did not hear that (i) the defendant's parents were abusive alcoholics who drank constantly, (ii) the defendant would often cower in his bedroom in terror while his drunk parents physically abused each other, including butcher knife attacks, (iii) the defendant was severely beaten by his mother with her fists and a leather strap, (iv) the defendant's mother singled him out for emotional torment, (v) the defendant's grandparents' home was "pure hell" as they heaped horrible physical and emotional abuse upon him (*i.e.*, rubbing his face in his own urine), (vi) the defendant witnessed multiple suicide attempts by his mother, and so on. The gap between the evidence that was and was not presented to the jury in *Johnson* is far wider than in Ray's case; therefore, *Johnson* does not assist petitioner's prejudice argument. (Incidentally, while petitioner does not mention it, *Johnson* is quite damaging to his *Strickland* deficient performance argument.) Although the jury did not hear all of the details of Ray's background, "the basic story of his troubled abusive childhood was nonetheless known to the … jury when it sentenced him to death." *Holsey*, 694 F.3d at 1265-66. It was not unreasonable for the Alabama courts so to conclude, and *Johnson* does not require a different result.

Third, petitioner characterizes the September 26 Order as "inconsistent" because it refers to new mitigation evidence as cumulative, on the one hand, while saying on pages 28 and 81 that if such evidence had been offered it would have opened the door for the State to present harmful evidence. (Doc. 41, at 18-19.) This "inconsistency" does not exist, as petitioner unhelpfully compares apples to oranges. In the *Brady* analysis, the September 26 Order pointed out that evidence postulating some other culprit for the Mabins murders would have opened the door for the State to present damaging inculpatory evidence to the Harville jury establishing Ray as the Mabins brothers' killer. (Doc. 37, at 28 & n.35.) But petitioner never brought a *Strickland* claim faulting trial counsel for not putting on mitigation evidence relating to the Mabins slayings, and this Court never opined that any Mabins guilt/innocence evidence that trial counsel might have offered would have been cumulative. By the same token, the September 26 Order explained that if trial counsel had put on character evidence of Ray's reputation for being peaceful and non-violent, doing so "would have opened the door for the State to present evidence that Ray had been convicted of brutally gunning down two young boys in cold blood." (Doc. 37, at 81.) This Court never found that any such character evidence as to Ray's reputation for peacefulness and non-violence was cumulative of the mitigation evidence that trial counsel did present. In short, this ground for Rule 59(e) relief proceeds from a false premise.

### C. *Ineffective Assistance of Counsel with Respect to Alleged Steroid Abuse.*

Finally, petitioner seeks reconsideration of the September 26 Order's denial of an evidentiary hearing to allow him to put on evidence that Ray was abusing steroids at the time of the Harville murder. (Doc. 41, at 19-21.) The steroid-abuse issue is relevant to these habeas proceedings only insofar as petitioner contends that he received ineffective assistance of trial counsel in failing to investigate a steroid-abuse defense.

This ineffective assistance claim is subject to the normal two-pronged *Strickland* analysis of deficient performance and prejudice. At most, the proposed evidentiary hearing might facilitate petitioner's efforts to shore up the "prejudice" side of the equation. Such a hearing would do nothing to establish *Strickland* deficient performance. After careful examination of the record, both the Alabama courts and the undersigned agreed that "trial counsel had no inkling that steroid abuse was a pertinent consideration for Ray's trial. There were no 'red flags' and no reasons to investigate further." (Doc. 37, at 112.) No one ever told Ray's trial counsel that he was abusing steroids or experiencing personality alterations at the time of the Harville murder:

Not Ray, not his mother, not any of the numerous other fact witnesses (family members, acquaintances, etc.) interviewed by trial counsel. Ray's trial counsel testified as to the steroid issue as follows, "In my discussions with Domineque it was not a big deal. It was not a problem. It was not an issue." (Vol. 25, R-52 at 411.) The Alabama courts made a finding that "counsel had no reason to believe that steroid use was an issue in this case." *Ray II*, 80 So.3d at 997.

Petitioner says that his lawyer's failure to investigate the steroid-abuse issue was constitutionally deficient because Dr. Ronan's report specified that Ray had told her that "he had used steroids for several years and was addicted to these at about 16" (Vol. 14, R-47 at 1345), some three years before the Harville murder. That slender reed did not trigger a constitutional obligation for counsel to retain a steroids expert, particularly where he followed up by discussing the issue with Ray and reasonably concluded that it was a non-issue. *See, e.g., Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008) ("[I]n evaluating the reasonableness of the investigation, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.") (citations omitted); *Michael v. Crosby*, 430 F.3d 1310, 1322 (11th Cir. 2005) (failure to investigate a line of defense further "would not establish deficient performance under *Strickland* because, based on our own review of the record, there were no 'red flags' that would have prompted a reasonable attorney to investigate further for PTSD materials"). Moreover, "what investigation decisions are reasonable depends critically upon information the defendant furnishes to his counsel." *Pooler v. Secretary, Florida Dep't of Corrections*, 702 F.3d 1252, 1269 (11th Cir. 2012) (citation and internal quotation marks omitted). On this record, the Court finds that trial counsel's decision not to investigate the steroid issue further was a reasonable exercise of professional judgment based on the evidence known to him. Petitioner having failed to establish that no competent counsel would have declined to investigate the steroid defense further in those circumstances, his efforts to establish that trial counsel rendered constitutionally ineffective assistance as to the steroid defense cannot succeed.[13]

---

[13] Petitioner insists that trial counsel was "warned of the possibility that Ray's steroid addiction played a role in the crime." (Doc. 41, at 20-21.) This is wishful thinking. A report that Ray had been addicted to steroids three years earlier did not warn his lawyer that he was under the influence of anabolic steroids when he stabbed Tiffany Harville to death. A reasonable attorney would not feel compelled to investigate the issue further when his own
(Continued)

In finding that this claim flunks a *Strickland* deficient performance analysis, the Court need not make any determinations as to prejudice.  Therefore, holding an evidentiary hearing to hear expert testimony that Ray was prejudiced by his trial counsel's failure to develop a steroid defense would be a waste of time.  Even if Ray successfully proved prejudice, the claim would be denied for failure to prove deficient performance.  The law does not require the habeas court to hold evidentiary hearings that would be futile, hollow endeavors.  "In a habeas corpus proceeding the burden is on the petitioner to establish the need for an evidentiary hearing." *Chavez v. Secretary Florida Dep't of Corrections*, 647 F.3d 1057, 1060 (11th Cir. 2011) (citations and internal marks omitted).  "[I]f a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." *Id.* (citations omitted); *see also Valle v. Secretary for Dep't of Corrections*, 459 F.3d 1206, 1216 (11th Cir. 2006) ("no evidentiary hearing is necessary where the proffered evidence would not affect the resolution of the claim").  Such is the case here.

## IV. Conclusion.

For all of the foregoing reasons, petitioner's Motion to Alter or Amend Judgment (doc. 41) is **denied** in its entirety.

DONE and ORDERED this 12th day of November, 2013.

              s/ WILLIAM H. STEELE
              CHIEF UNITED STATES DISTRICT JUDGE

---

conversations with the defendant had satisfied him that steroids were not an issue, when the defendant had not identified steroid use at the time of the offense, when the defendant's mother, family and friends did not raise any inkling that Ray was abusing steroids at the time of the murder, and so on.  Perhaps a steroids expert with specialized training can credibly testify that a defendant was "very likely" abusing steroids when the defendant says he wasn't, when his friends and family members did not believe there was an issue, and so on.  But a defense lawyer's performance cannot be branded objectively unreasonable and outside the wide range of reasonable professional assistance where counsel declined to expend scarce defense resources chasing down what looked for all the world to be a non-issue.