IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DOMINEQUE RAY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0543-WS-N |
| | ) |
| KIM THOMAS, Commissioner, Alabama | ) |
| Department of Corrections, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**ORDER**

This long-closed death penalty habeas matter comes before the Court on more than $450,000 in CJA vouchers for payment recently submitted by petitioner's counsel of record for approval pursuant to 18 U.S.C. § 3599.

To understand the reasons for and the conclusions reached in this Order, it is vital to review the procedural history of the case. On September 19, 2011, petitioner, Domineque Ray, then an inmate on Alabama's death row for the murder of Tiffany Harville, filed an extensive 147-page Petition for Writ of Habeas Corpus by Prisoner in State Custody under Death Sentence, pursuant to 28 U.S.C. § 2254. In that endeavor, Ray was represented on a *pro bono* basis by a team of lawyers from the Indiana law firm of Plews Shadley Racher & Braun (hereinafter the "Firm").[1] As of September 2011, the Firm had been representing Ray *pro bono* for many years, having commenced the representation back in February 2003 through the American Bar Association's Death Penalty Representation Project. Pursuant to that arrangement, the Firm had served as Ray's counsel, free of charge and without payment, throughout all Alabama state postconviction proceedings. To the Court's knowledge, the Firm had never objected to any court

---

[1] In the undersigned's experience, such an arrangement is entirely commonplace in capital habeas matters litigated in this District Court. Indeed, with few exceptions, death penalty § 2254 petitioners are normally represented by out-of-state attorneys affiliated with large civil law firms, who perform the postconviction legal work without compensation.

at any level that such representation posed a hardship or that the Firm was unwilling to continue representing Ray without compensation indefinitely through the conclusion of his legal challenges to his conviction, death sentence and execution.

In connection with the filing of the § 2254 Petition, four attorneys from the Firm promptly filed motions for admission *pro hac vice*, all of which were granted in the ordinary course of business. (*See* docs. 2-7.) As of September 2011, none of these attorneys had notified the Court of any anticipated change to their *pro bono* representation of Ray, much less suggested that they would refuse to serve as his counsel of record in the § 2254 matter without compensation. Between September 2011 and May 2012, the § 2254 proceedings moved forward in the ordinary course. The State filed an Answer (doc. 15) to Ray's § 2254 Petition on January 26, 2012, as well as the indexed record of state-court proceedings. Petitioner requested and received leave to file a merits brief in February 2012. (*See* doc. 21.)

On April 12, 2012, apropos of nothing, Ray (by and through counsel of record) filed a Motion to Proceed *In Forma Pauperis* (doc. 24) and an "Unopposed Motion for Appointment of Counsel" (doc. 25). The IFP Motion was supplemented by order of the Court on May 1, 2012 (*see* doc. 27), at which time both motions were taken under submission. The Motion for Appointment of Counsel was curious because this Court had never seen such a motion filed in a death penalty habeas case before, particularly by a firm that had a long-term *pro bono* relationship with the death-row petitioner. Even more confusing and unorthodox was the Motion's timing, inasmuch as the Firm delayed filing it until some seven months into the lifespan of the § 2254 proceedings. Frankly, it was entirely unclear to this Court what counsel were asking for or why they were asking for it. The Motion for Appointment of Counsel included multiple statements touting the Firm's longstanding *pro bono* arrangement in the Ray representation, and lacked any indication that the Firm needed, expected or wanted relief from that arrangement.[2] Conspicuously absent from the Motion for Appointment was any express

---

[2] For example, the Motion stated that Attorney Racher of the Firm "has represented Mr. Ray in all postconviction proceedings before Alabama state courts since [February 2003]. He is currently representing Mr. Ray without compensation." (Doc. 25, ¶ 3.) The Motion went on to identify three other Firm attorneys who have been involved in Ray's representation long-term, and indicated that they had "provided Mr. Ray with consistent representation while accommodating the demands of their paying clients. … They will continue to divide the workload in a manner that provides consistent and efficient representation to Mr. Ray." (*Id.*, ¶ (Continued)

statement that the Firm's objective in filing the Motion was to be compensated on an hourly basis by federal funds through the conclusion of the representation. Indeed, the Motion was entirely silent on the subject of payment.

In reviewing the Motion for Appointment (which, again, was filed and considered hand-in-hand with an IFP Motion), the Court did not appreciate that the Firm intended to bill the federal government on an hourly basis for all legal services performed from that day forward until Ray's execution by the State of Alabama. In the undersigned's experience, no *pro bono* death penalty habeas counsel appearing in this District Court (before this Court or any other District Judge) has ever requested such a payment arrangement; rather, the uniform practice has been for civil law firms representing the § 2254 petitioner *pro bono* to continue to do so throughout the federal habeas proceedings and beyond. Moreover, the information before the Court was that the Firm had been representing Ray without compensation for more than nine years. Indeed, the Firm had represented Ray *pro bono* throughout the drafting and filing of the § 2254 Petition and for the first seven months of these federal habeas proceedings. There was no inkling in the Motion that the Firm was unwilling or unable to continue doing so on a going-forward basis. The face of the Motion itself suggested that the appointment would not alter the status quo or the Firm's activities or arrangements in representing Ray. For aught that appeared in the Motion for Appointment, this request was simply a perfunctory, unopposed formality. The Court treated it as such, and granted the Motion via Order (doc. 28) entered on May 8, 2012. Nothing in the May 8 Order reflected any understanding or recognition by the Court that the Firm was going to bill the federal government by the hour for legal services performed on Ray's behalf from that date until his execution nearly seven years later.[3]

---

4.) The Motion touted the training and assistance counsel had received from "a private nonprofit organization that provides legal representation to indigent defendants and prisoners," and expressed counsel's intent to "continue to combine these resources with his in-depth, nine-year experience with Mr. Ray's case." (*Id.*, ¶ 5.)

[3] Had the Court surmised that the Firm sought compensation pursuant to 18 U.S.C. § 3599(g) from that moment forward, the undersigned certainly would have made proper allowance for that fact in the May 8 Order. At a minimum, the Court would have required the Firm to submit a budget for these § 2254 proceedings and beyond; moreover, the Court would have taken an active role in monitoring the Firm's efforts and fixing budgetary parameters and boundaries for each phase of the legal work to be performed thereafter. The May 8 Order lacks
(Continued)

Ray's § 2254 Petition was not successful. On September 27, 2013, the undersigned entered an Order (doc. 37) and Judgment (doc. 38) denying the Petition, as amended, in its entirety. On November 12, 2013, this Court denied Ray's motion to alter or amend judgment pursuant to Rule 59(e), Fed.R.Civ.P. On February 29, 2016, the Eleventh Circuit Court of Appeals issued a Mandate (doc. 49) affirming the denial of Ray's habeas petition. The United States Supreme Court denied Ray's petition for writ of certiorari on October 31, 2016 and denied rehearing on January 23, 2017, at which point these § 2254 proceedings were fully and finally concluded. For the next two years, the Firm continued to represent Ray, engaging in numerous (ultimately unavailing) legal maneuvers to halt the execution and to allow Ray's Muslim spiritual advisor to be present in the death chamber with him. The State of Alabama executed Domineque Ray on February 7, 2019.

Following the denial of Ray's Rule 59(e) motion in November 2013, this Court had no contact or interaction with the Firm in connection with the Ray representation. At no time did the Firm notify the Court that it was continuing to represent Ray, that it expected to be paid by the federal government at an hourly rate for that representation, or that it anticipated accruing hundreds of thousands of dollars in additional legal fees on Ray's behalf after the conclusion of his § 2254 proceedings. Approximately two weeks ago, the Firm submitted vouchers to the Clerk of Court, seeking payment in the amount of $456,708.03 for three attorneys' time (plus expenses) on the Ray matter.[4] The sole basis for that payment request is the May 8, 2012 Order granting the Unopposed Motion for Appointment of Counsel.

Had that Motion included any statement that counsel's purpose in filing it was to secure hourly compensation from the federal government for the duration of the Firm's representation of Ray, the Court would have denied it. Here is why: By statute, a § 2254 petitioner seeking to vacate or set aside a death sentence is entitled to appointment of compensated counsel only if he "is or becomes financially unable to obtain adequate representation." 18 U.S.C. § 3599(a)(2).

---

any such provisions because the undersigned never appreciated that this is what the Firm was asking. At no time then or later did the Firm disclose any further information to the Court about its intentions or the purposes of requesting the May 8 Order.

[4] The breakdown of those vouchers is as follows: $135,171.13 for attorney Racher, $164,863.30 for attorney Tatum, and $156,673.60 for attorney Willard.

Simply put, no showing was ever made that Ray was or had become financially unable to obtain adequate representation in connection with his habeas petition. To the contrary, the information before the Court was that the Firm had been representing Ray in state post-conviction proceedings (and for the first eight months of the § 2254 proceedings) for more than nine years, notwithstanding his indigence. The Firm – which was unquestionably providing Ray with adequate representation – never indicated at any time that it was unwilling or unable to continue representing Ray on a *pro bono* basis for the remainder of the § 2254 proceedings. Instead, the Motion for Appointment of Counsel touted the Firm's long track record of representing Ray without compensation and of accommodating Ray's needs alongside those of their paying clients, as well as their expectation of continuing to combine available resources from a nonprofit organization that provides legal representation to indigent defendants with their own experience in representing Ray for nine years in postconviction proceedings. From these facts, the conclusion is clear: Ray's financial condition in no way impaired his ability to obtain adequate representation in the federal habeas matter. As such, he was not entitled to appointment of paid counsel pursuant to the provisions of 18 U.S.C. § 3599(a)(2). Vacatur of the May 8, 2012 Order would be entirely appropriate given these circumstances.

Even if the Firm had made a sufficient showing that Ray was "financially unable to obtain adequate representation" in his § 2254 proceedings (which it did not and could not, because the Firm had already been representing Ray adequately in the § 2254 matter for many months, and in state Rule 32 proceedings for many years before that, notwithstanding Ray's financial constraints), the May 8, 2012 Order would properly be rescinded as the product of obvious confusion and a misunderstanding between the Court and counsel. Again, the Firm never stated its intent to cease providing legal services for Ray on a *pro bono* basis and never informed the Court that the purpose of the Motion for Appointment of Counsel was to secure hourly compensation for Ray's counsel from that day forward until the State of Alabama executed Ray seven years later. The Court would not have rubber-stamped that Motion via a perfunctory Order had it so understood. The Court certainly would have investigated why counsel were abruptly asking for a change in the nature of their representation of Ray so many years into their *pro bono* arrangement. The Court would not have approved three lawyers to represent Ray in these circumstances. The Court absolutely would have required counsel to submit a budget (rather than affording them *carte blanche* to spend whatever they wished) and

would have held them accountable on an ongoing basis to avoid excessive spending and waste of federal funds. The Court acted in the manner it did because it misunderstood the Firm's request. That misunderstanding resulted in large part from the Motion's lack of clarity. To be sure, the Motion did cite (without comment) 18 U.S.C. § 3599. But in this Court's long experience with death penalty habeas petitioners being represented by large-firm civil attorneys on a *pro bono* basis, no counsel had ever sought paid status under § 3599. Nothing in the Motion clarified the Firm's intentions.

The foregoing sets forth the defects in the April 2012 Motion for Appointment of Counsel, the Court's view that Ray was ineligible for appointment of paid counsel under 18 U.S.C. § 3599(a)(2), and the confusion, miscommunication and misunderstanding that ultimately yielded the May 8, 2012 Order. The obvious question is what to do with the $456,708.03 in CJA vouchers that the Firm recently submitted for payment. The undersigned's first impulse was simply to vacate the May 8 Order based on the aforementioned considerations. However, the Court also recognizes that the Firm may have subjectively expected to be paid out of CJA funds (despite never communicating that expectation to the Court) based on the May 8 Order. Under the circumstances, the Court concludes that the fairest, most equitable way to resolve the situation is to approve the vouchers pursuant to 18 U.S.C. § 3599(g)(1) to compensate the Firm for all legal services provided to Domineque Ray between May 8, 2012 (the date on which the appointment order was entered) and January 23, 2017 (the date on which the U.S. Supreme Court denied rehearing of the denial of Ray's petition for writ of certiorari, thus fully and finally concluding these § 2254 proceedings). The approved amounts for each attorney for that 56-month period during which the Firm was appointed in these § 2254 proceedings are **$13,650.80** for attorney Racher, **$33,044.10** for attorney Tatum, and **$11,908.90** for attorney Willard, plus **$4,724.82** in expenses, for a grand total of **$63,328.62.80** in approved payments under the submitted vouchers. All other entries on the vouchers are disallowed and not approved.[5]

---

[5] As should be evident from the foregoing, the vast majority of the voucher entries submitted relate to time expended <u>after</u> the § 2254 proceedings concluded in January 2017. During the two-year period from January 2017 through February 2019, the Firm engaged in extensive legal maneuvering to stay Ray's execution and to litigate various other execution-related issues, mostly in state court. To be clear, the Court is well aware that statutory and case authority provides that such services are generally compensable for § 3599-appointed counsel. *See* 18 U.S.C. § 3599(e) ("each attorney so appointed shall represent the defendant throughout (Continued)

In order to conform to certain technical requirements and limitations of the electronic voucher processing software, and in order to receive reimbursement in the authorized amount set forth above, counsel are **ordered** to prepare and submit new CJA30 voucher forms extracting (and consisting solely of) their time entries and expenses for the period of May 8, 2012 through January 23, 2017. Counsel are strongly encouraged to contact Chief Deputy Clerk Jeff Reinert for assistance with this endeavor, and to ensure that their resubmitted CJA30 vouchers correspond to the approved amounts set forth above.

DONE and ORDERED this 12th day of April, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

every subsequent stage of available judicial proceedings, including … applications for stays of execution and other appropriate motions and procedures"); *Harbison v. Bell*, 556 U.S. 180, 194, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009) (holding that "§ 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation"). However, there are extenuating circumstances here. The Firm's federal appointment in this case was the product of miscommunication and confusion. The Court is convinced that Ray was ineligible for appointed counsel under § 3599(a)(2) because he was not "financially unable to obtain adequate representation" for his § 2254 proceedings. The Court did not understand the Firm to be seeking compensation under § 3599(g)(1) in accordance with their representation of Ray, and would never have approved such an arrangement under the particular facts presented here. This Order is designed not to subvert *Harbison* and § 3599(e), but as a fair and equitable alternative to vacating the appointment order altogether. Under this Order, every penny of the Firm's billings during the entire lifespan of this § 2254 matter beginning with the date of appointment and ending with the Supreme Court's denial of rehearing nearly five years later is awarded to them. This result strikes the Court as fair and just, and more favorable to the Firm than outright vacatur of an erroneous appointment order that was the product of misunderstanding and undisclosed expectations.